## DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS & ST. JOHN

CHRISTINE HAMILTON as the )
personal representative of the )
Estate of Blair Shannon, )
                       )
           Plaintiff, )      **Civil No. 2008-2**
                       )
       v. )
                       )
DOWSON HOLDING COMPANY, INC. )
d/b/a CARIB BEACH RESORT and )
BEST WESTERN INTERNATIONAL, )
INC. )
                       )
           Defendants. )
_____ )

ATTORNEYS:

**Alan R. Feuerstein, Esq.**
Buffalo, N.Y.
      *For the plaintiff.*

**Thomas H. Hart, III, Esq.**
St. Croix, U.S.V.I.
      *For the plaintiff.*

**Terri Griffiths, Esq.**
St. Thomas, U.S.V.I.
      *For defendant Dowson Holding Co., Inc.*

**James L. Hymes, III, Esq.**
St. Thomas, U.S.V.I.
      *For defendant Best Western International, Inc.*

### MEMORANDUM OPINION

**GÓMEZ, C.J.**

     Before the Court is the motion of defendant Dowson Holding
Co., Inc. ("Dowson") to strike as untimely the expert reports
submitted by the plaintiff, Christine Hamilton ("Hamilton") as

the personal representative of the Estate of Blair Shannon

("Shannon").  Hamilton opposes the motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 19, 2006 Shannon was shot and killed by an

individual who attempted to hold up Shannon and his companion on

the premises of the Carib Beach Resort, located on St. Thomas,

U.S. Virgin Islands (the "hotel").  Dowson operates the hotel as

a member of a non-profit association of hotels known as Best

Western International, Inc. ("Best Western").[1]

Hamilton initiated this five-count lawsuit in January 2008

against Dowson and Best Western (jointly, the "defendants").  At

this time, only the first, third, and fourth causes of action

remain.[2]  The first cause of action asserts a wrongful death

claim on behalf of Shannon's estate and Shannon's only child,

Chelsea Shannon.  The third cause of action asserts a negligence

claim based on the defendants' alleged duties as landowners.  The

fourth cause of action asserts a negligence claim based on the

defendants' alleged duties as innkeepers.

---

[1] Best Western is no longer a defendant in this action, having settled with the plaintiff.

[2] On March 17, 2009 this Court entered partial summary judgment against Hamilton, dismissing the second and fifth causes of action in the complaint.

On June 15 and June 17, 2010, Hamilton served on Dowson four expert reports.[3] Hamilton offers the report of John A. Harris ("Harris"), who has in the past served as an expert in forensic security. Hamilton also provides the report of David M. Theophilus ("Theophilus"), a hospitality consultant. Hamilton's third expert is Louis W. Irmisch, III, M.D. ("Irmisch"), a board certified specialist in internal and forensic medicine. Finally, Hamilton offers the report of Ronald Hatcher ("Hatcher"), who did a security survey of the hotel.[4]

Dowson now moves to strike all of Hamilton's expert reports.

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 16(b), a court must enter a scheduling order that limits the time to complete discovery and file motions, among other things. A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Pursuant to Rule 37, a court

---

[3] On July 3, 2010, in support of its opposition to summary judgment, Hamilton submitted incomplete versions of its expert reports. The Court did not receive a notice of filing the reports on June 15 or June 17, 2010. Nonetheless, the parties do not dispute that Hamilton served her reports on Dowson on June 15 and June 17, 2010.

[4] Federal Rule of Civil Procedure 26(a)(2)(B) governs the reports of experts. It requires that the expert witness list his "qualifications, including a list of all publications authored in the previous ten years. . . a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and . . . a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(iv)-(v0). Hatcher does not provide a curriculum vitae, nor any other description of his qualifications to serve as an expert. He also does not say anything about testifying in other trials. Finally, Hatcher does not provide any information about his compensation in this matter.

may prohibit a party from introducing evidence which was produced

in contravention of the court's discovery order. Fed. R. Civ. P.

37(b)(2)(A)(II).

A court may modify the Scheduling Order on a showing of good

cause,

> if it cannot reasonably be met despite the diligence of
> the parties seeking extension. Since the Scheduling
> Order is entered early in the litigation, this standard
> seems more appropriate than a "manifest injustice" or
> "substantial hardship" test. Otherwise, a fear that
> extensions will not be granted may encourage counsel to
> request the longest possible periods for completing
> pleadings, joinder and discovery. Moreover, changes in
> the Court's calendar sometimes will oblige the Judge or
> Magistrate when authorized by District Court Rule to
> modify the Scheduling Order.

Fed. R. Civ. P. 16 Advisory Committee Notes to 1983 Amendments.

Federal Rule of Civil Procedure 26(a)(2)(C) governs the

timing for disclosure of expert testimony.  It provides "[a]

party must make these disclosures at the times and in the

sequence that the court orders. Absent a stipulation or a court

order, the disclosures must be made: (i) at least 90 days before

the date set for trial or for the case to be ready for trial . .

. ." Fed. R. Civ. P. 26(a)(2)(C).

Further, Rule 26(b)(4) requires parties to have the

opportunity to depose experts presented by their opponents. Fed.

R. Civ. P. 26(b)(4)(A) ("A party may depose any person who has

been identified as an expert whose opinions may be presented at

trial.  If Rule 26(a)(2)(B) requires a report from the expert,

the deposition may be conducted *only after the report is provided*." (emphasis added)).

When considering whether or not to exclude testimony of witnesses based on a party's failure to disclose that witness in its pretrial memorandum, and therefore failure to comply with a court's scheduling order, the United States Court of Appeals for the Third Circuit has suggested several factors to consider. They include: (1) bad faith of the party seeking to call the witnesses, (2) ability of the proponent of the witnesses to have discovered the witnesses earlier, (3) validity of the excuse offered by the proponent, (4) willfulness of the party's failure to comply with the court's order, (5)the party's intent to mislead or confuse his adversary, (6) and, the importance of the excluded testimony. *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977).

> Underlying the cases to which we have adverted are these basic considerations: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would  have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order.

*Id*.

### III.  <u>ANALYSIS</u>

Dowson argues that Hamilton's expert reports should be stricken because they were not timely served.  It argues that the late service of the expert reports makes it impossible to go forward with the trial as scheduled because there is no time for depositions of the experts, rebuttal expert reports, or *Daubert* motions.

Hamilton points out that on December 9, 2008, Dowson moved for a stay of all discovery, pending the resolution of a motion to disqualify counsel.  On December 19, 2008, the Magistrate Judge in this matter granted the order to stay "pending the taking of Mr. Dennis Sheraw's depositon on January 8, 2009." (D.E. 61.)  The record indicates that Sheraw was deposed on January 8, 2009.  Given that the order staying discovery stated that the stay was in place pending Sheraw's deposition, the stay should have been automatically lifted upon completion of that deposition.

Nonetheless, Hamilton contends that as a result of the Magistrate's December 19, 2008 order, discovery in this matter was stayed for months, hampering her ability to timely produce the expert reports.

On May 8, 2009, the Court issued its Trial Management

Order.[5]  Significantly, that Trial Management Order stated
"[t]his Order supersedes any scheduling order that may
have previously been entered in this matter."  As such, any stay
on discovery was automatically lifted by the Court's May 8, 2009
order.[6]  Nonetheless, Hamilton argues that discovery was still
stayed on July 5, 2009, when Dowson filed a motion for summary
judgment.  The record in this matter and the time periods that
elapsed even after the latest possible date on which the
discovery stay could have been lifted belie Hamilton's argument.

Following the order purporting to lift the stay in August of
2009, Hamilton had approximately seven months, or until March 26,
2010, to produce her expert reports in compliance with this
Court's Trial Management Order.  In fact, as demonstrated by the
docket in this matter, following the August, 2009 order lifting
the stay, the parties engaged in extensive fact discovery from
October of 2009 to January 2010.

On February 8, 2010, the Magistrate Judge issued a minute
order following a status conference.  That order said that a
"30(b)(6) deposition will continue . . . due to unanticipated

---

[5] The Court's Trial Management Order set certain pretrial deadlines.
Fact discovery was to be completed no later than February 26, 2010.  Expert
reports were to be produced no later than March 26, 2010, with responsive
expert reports due on April 30, 2010.  Further, expert witness depositions
were to take place no later than May 28, 2010.

[6] Somewhat confusingly, on August 27, 2009, the Magistrate Judge in this
matter filed an order granting Hamilton's motion to lift the discovery stay.

interruption, in early April." On February 9, 2010, Hamilton

moved for an extension of the deadlines set in the May 8, 2009

Trial Management Order.[7] On March 9, 2010, the Court issued an

order denying summary judgment on the grounds that "[d]iscovery

is still ongoing in this matter. The deadlines for discovery

have been extended by the Magistrate Judge." (D.E. 191.)

Again on June 1, 2010, Hamilton moved for an extension of

the deadlines in the Trial Management Order, including the

discovery cutoff, which had already passed. The Court did not

rule on that motion, and on June 24, 2010, the Magistrate Judge

denied the motion as moot.

Hamilton served her expert reports on Dowson on June 15,

2010 and June 17, 2010, nearly three months late. Hamilton's

argument that she could not produce her expert reports any

earlier based on a stay of the discovery process is not supported

by the record in this matter. At most, discovery was stayed,

briefly, between December 19, 2008 and January 8, 2009. Even if

Hamilton labored under the assumption that discovery was stayed

by a Magistrate Order, certainly the order by the Chief Judge of

the District Court, issued on May 8, 2009, should have disabused

her of that mistaken assumption.

---

[7] The Court did not rule on the motion for extensions of the trial
management deadlines, and on June 24, 2010, the Magistrate Judge denied the
motion as moot.

In determining whether exclusion is appropriate under these circumstances, the Court must consider several factors:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order.

*Meyers*, 559 F.2d at, 905.

While not using the term prejudice, Dowson does point to harm that the late filing of the expert reports has done to its case. Dowson claims that "Plaintiff's failure to serve timely reports renders it impossible to go forward with trial as scheduled by this Court." (Mot. to Strike 1.) Dowson also argues that the untimely submission of expert reports leaves no time for deposition of those experts, rebuttal expert reports, or *Daubert* motions. *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).

More precisely, Hamilton has left Dowson with a six week window, after the filing of her expert reports, before the start of trial. After the receipt of expert reports, a defendant would normally give the reports to her own experts. The defendant's experts would then need time to review the reports and underlying materials, and produce responsive reports. After that process, the defendant would depose the plaintiff's experts. It is highly unlikely that this process could be or should be completed in six

weeks.

If Hamilton is allowed to proceed in reliance on the untimely filed expert reports, the jury will hear the testimony of Hamilton's experts unrebutted by Dowson's own experts. This would clearly be prejudicial, and indicates, under *Meyers*' framework, that the reports should be excluded.

Dowson has not indicated how allowing Hamilton's experts to testify would interfere with the orderly and efficient trial of this case. This factor does not seem to weigh one way or the other in this matter.

With regard to the final *Meyers* factor, it seems that Hamilton's late production of expert reports, if not somewhat willful, showed flagrant disregard for the Court's order. The Court cannot appreciate Hamilton's claim regarding confusion about scheduling orders when there was a very clear order from the Court on May 8, 2009. It should have been clear at that time that all previous scheduling orders were superseded.

The Court recognizes that "the exclusion of critical evidence is an 'extreme' sanction . . . not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Meyers*, 559 F.2d at 905. Where, as here, "flagrant disregard" describes precisely the conduct undertaken by Hamilton, that sanction becomes appropriate. Moreover, "[d]istrict courts have

broad discretion in establishing and enforcing deadlines and in maintaining compliance with discovery and pretrial orders." *In re Baycol Prods. Litig.*, 596 F.3d 884, 888 (8th Cir. 2010). It is appropriate to exclude a late-filed expert report where the explanation for its tardiness is insufficient. *Id.* (affirming exclusion of late expert report where only reason proffered for delay was that the expert reviewed the plaintiff's medical records in greater detail); *see also Salgado v. GMC,* 150 F.3d 735, 738 (7th Cir. 1998) (affirming district court's decision to strike untimely expert report where counsel asserted that reports were late and cursory because he and opposing counsel had an understanding that reports would be "preliminary" in nature).[8]

## IV. <u>CONCLUSION</u>

For the reasons given above, the Court will grant the motion to strike Hamilton's late expert reports. An appropriate order accompanies this opinion.

S\_____

**CURTIS V. GÓMEZ**
**Chief Judge**

---

[8] Two of Hamilton's expert reports are captioned as "preliminary" reports.